IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case Number CIV-07-318-C |
| TXD SERVICES LP, a Texas Limited Partnership, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff and Defendant entered into four contracts whereby Defendant was to provide four drilling rigs of a certain capability to well sites operated by Plaintiff. The parties executed the contracts on February 16, 2006. Defendant delivered the first of the rigs on February 2, 2007. Upon its arrival, the rig was rejected by Plaintiff who argued it could not safely lift the weight required by the contract. Plaintiff also cancelled the other three contracts on the same basis. The parties have now filed cross-motions for summary judgment, each arguing the undisputed material facts demonstrate the other breached the contract. Plaintiff also presses a claim for fraudulent inducement. Defendant argues that because Plaintiff repudiated the contracts, the liquidated damages clause is triggered and it is entitled to recover those damages.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986). Of particular importance in this case is subparagraph (e)(1) to Rule 56. In pertinent part that portion of the rule states: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

## **LIABILITY**

The parties do not dispute that contracts existed but argue whether they can be enforced. Plaintiff argues that Defendant fraudulently induced it to enter into the contracts and therefore the contracts should be rescinded. To prove fraudulent inducement under Arkansas law,[1] the Court must consider the following questions:

> (a) Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?
> (b) Did it work an injury?
> (c) Was the relative position of the parties such, and their means of information such, that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other?
> (d) Did the injured party rely upon the fraudulent statements of the other, and did he have a right to rely upon them?

Ballard v. Carroll, 621 S.W.2d 484, 486-87 (Ark. App. 1981). Plaintiff argues that it has established facts sufficient to warrant rescission under this law. See English v. North, 166 S.W. 577 (Ark. 1914) (establishing that rescission is proper remedy for contract induced by fraud).

---

[1] The parties agreed in the contracts that Arkansas law would govern the interpretation, enforcement, and litigation of the contracts.

Plaintiff directs the Court to two portions of the governing contracts. In setting forth the "Derrick or Mast: Make, Size and Capacity:" the contract required Defendant to provide a "Schramm Tele-Mast 180,000lbs. with 135% safety factor" Dkt. No. 41, Exh. 1, Exh. A, ¶ 4.1.[2]  In a second portion of the contract, the required capacity of the rig is stated:

> Operations shall not be attempted under any conditions which ~~exceed the capacity of the equipment specified to be used hereunder or where canal or water depths~~ are in excess of 10,000' or 230,000 lbs ~~feet~~.  Without prejudice to the provisions of Paragraph 14 hereunder, Contractor shall have the right to make the final decision as to when an operation or attempted operation would exceed the capacity of specified equipment.

Dkt. No 41, Exh. 1, ¶ 11 (alteration in original).  Plaintiff argues that these provisions required Defendant to provide a rig with a lifting capacity of 230,000 lbs. and the rig provided by Defendant was limited to 180,000 lbs.  Plaintiff argues that it was fraudulently induced into entering the contract based on Defendant's representations of the rig's abilities.

According to Plaintiff, Defendant either knew the supplied rig did not meet the contract requirements or was ignorant of the fact that the rig did not meet the requirements of the contract but still represented that it would satisfy those requirements. Plaintiff argues that under either scenario, Arkansas law would find Plaintiff is entitled to rescission.  See Riley v. Hoisington, 96 S.W.3d 743, 748 (Ark. App. 2003) ("'It is well settled that

---

[2] The copies of the contracts provided by Plaintiffs are virtually illegible.  Because there is no dispute regarding the contents of the contracts, the Court will rely on those provided by Defendant.

representations are construed to be fraudulent when made by one who either knows the assurances to be false or else not knowing the verity asserts them to be true.'") (quoting Lane v. Rachel, 389 S.W.2d 621 (Ark. 1965)).

The evidentiary materials before the Court establish that Plaintiff was aware of the limitations of the rig prior to executing the contract. Dkt. No. 38, Exh. 5, the affidavit of Darvin Knapp, asserts Mr. Knapp was responsible for locating rigs and negotiating contracts for their use. Id. at ¶ 3. Mr. Knapp further attests that prior to execution of the contracts, he was told by Defendant's representatives that "the rig was rated at 180,000 pounds, it could safely lift 230,000 pounds on an intermittent basis and could do so safely." Id. Thus, the fact that Plaintiff now relies on in its attempt to rescind the contract -- the 180,000 lbs. rating -- was clearly known to it prior to execution of the contract. Further, the undisputed facts demonstrate that Defendant provided exactly the rig called for in the contract, namely a Schramm Tele-Mast 180,000 lbs. That Plaintiff decided after execution of the contract that the rig was inadequate does not provide grounds for rescission.

Plaintiff also argues that Defendant's explanations of how it would accomplish the requirement of lifting 230,000 lbs. were insufficient or indicate that Defendant was ignorant of the true facts but made assertions as if it were aware of all the facts. Again, Plaintiff's argument is not well taken. The evidence on which Plaintiff relies to support its argument is an exchange of e-mails after the contract was executed. However, those e-mails do not purport to modify the contract, nor do they create any ambiguity in the

contract. Accordingly, they have no bearing on the Court's interpretation of the contract. Fryer v. Boyett, 978 S.W.2d 304, 306 (Ark. App. 1998) ("When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed."). As noted above, the rigs supplied by Defendant were in full compliance with the contract terms.

Plaintiff argues that the ratings on the rigs establish as a matter of law that the rigs cannot "safely" pull 230,000 lbs. Thus, Plaintiff argues, Defendant breached the contract. Fatal to Plaintiff's argument is the absence of evidence in support and the fact that its concerns were not raised until after the first contract was executed. Defendant has offered undisputed evidence that due to the safety margins inherent in the construction of the rigs that they are capable of lifting 230,000 lbs. Further, Defendant has offered undisputed proof that the rigs will in fact lift 230,000 lbs. If Plaintiff had concerns about the rig's abilities, it was obligated to raise them prior to execution of the contract, not after. Indeed, the clear terms of the contract imposed on Defendant the sole right to declare the rigs could not perform certain work. See Dkt. No 41, Exh. 1, ¶ 11.

Plaintiff also argues that using the rigs to pull 230,000 lbs. would violate OSHA standards, as those standards prohibit using a rig above its rating. As Defendant notes, the standards on which Plaintiff relies are inapplicable as they are for a different type of rig. Faced with this fact, Plaintiff argues the general duty imposed by OSHA to provide a safe working environment establishes that using the rigs above their capacity is prohibited. As

noted above, there is no evidence that using the rigs to intermittently pull 230,000 lbs. cannot be done safely. While the manufacturer of the rigs states it is not recommended and can lead to premature failure, even it does not say it cannot be done. Further, it is clear that Plaintiff was aware, prior to execution of the contracts, of the rating on the rig and the fact that pulling 230,000 lbs. would exceed that rating. Plaintiff cannot now rely on some claimed illegal purpose to seek to void the contract. See Potomac Leasing Co. v. Vitality Ctrs., Inc., 718 S.W.2d 928, 929 (Ark. 1986):

> The rule supported by the weight of authority and approved by this court is that, though the contract is entered into by one of the parties for the furtherance of an illegal purpose, the contract will not be rendered illegal as to the other party, though he had knowledge of such illegal purpose, provided he does nothing in furtherance thereof.

(quoting Ashford v. Mace, 143 S.W. 1081 (Ark. 1912), quoting Hollenberg Music Co. v. Berry, 106 S.W. 1172 (Ark. 1907)).

Plaintiff has failed to offer any evidence or argument demonstrating a dispute of material fact regarding the reasons for the termination of the contract. Because the undisputed facts show Plaintiff improperly terminated the contract for rig 201 and anticipatorily repudiated the contracts for rigs 202-204, Plaintiff is in breach and is liable to Defendant for damages.

## DAMAGES

Plaintiff argues that because Defendant has given up ownership of the rigs under a financing agreement, Defendant lacks standing to assert the damages claim. However, Plaintiff fails to offer any authority to support its standing argument. Nevertheless,

because standing is a jurisdictional issue, the Court must consider it. Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir. 2006).

Defendant has established that the undisputed material facts demonstrate that it has suffered an injury, that injury arose from the wrongful conduct of Plaintiff, and that injury can be redressed by a favorable decision. Thus, Defendant has established the elements necessary to have standing to pursue its claims. See Bronson v. Swensen, 500 F.3d 1099, 1106 (10th Cir. 2007). That the rigs are now owned by a third-party does not affect Defendant's right to recover for the damages it suffered as a result of Plaintiff's actions, though it could have an effect on the measure of those damages.

The Court finds that a hearing is necessary to determine the amount of damages for the breach of contract in regards to rig 201. Consequently, this matter will be set for jury trial on the issue of damages incurred by Defendant for the breach of contract for rig 201.

As for the remaining rigs, Defendant argues the liquidated damages clauses in the contracts should be enforced. As for the other three rigs, Defendant asserts it is entitled to the liquidated damages set forth in the contracts. Plaintiff argues that each of the rigs have been or are under contract, often at rates greater than called for in the contracts between Plaintiff and Defendant, and therefore questions of fact remain regarding the damages, if any, suffered by Defendant. Plaintiff's argument focuses on the wrong time period. In determining the validity of a liquidated damages clause, the Court is to focus on the time of contracting and the ability to ascertain damages at that time. See Breeden Dodge, Inc. v. Acme Indus. Laundry, Inc., 601 S.W.2d 239, 241 (Ark. App. 1980) ("A

contractual stipulation for payment of a designated sum upon default will be sustained as liquidated damages where it appears the damages will be uncertain and difficult to ascertain.") (citing Foran v. Wisconsin & Arkansas Lumber Co., 246 S.W. 848 (Ark. 1923)). The liquidated damages clause is also reasonable. The clause provides that in the event of early termination by Plaintiff, it shall pay Defendant $500,000.00 for each rig. The contract term was for two years and Defendant reasonably anticipated making substantially more than that amount if the contract was fully performed.[3] Because the termination occurred prior to delivery of rigs, Defendant was unable to obtain any of the value provided by the contract. The parties agreed at the inception of the contract that Defendant's damages would be difficult to ascertain in the event of a breach, and the liquidated damages clause provides a reasonable method of calculating the harm suffered by Defendant as a result of Plaintiff's wrongdoing. Accordingly, Defendant is entitled to recover $1,500,000.00 in liquidated damages.

As set forth more fully herein, the undisputed material facts demonstrate that Plaintiff breached the contract by rejecting the rigs provided by Defendant. Further, the undisputed material facts establish that Defendant is entitled to recover liquidated damages as set forth in the contracts for rigs 202, 203, and 204. A jury trial will be held on the Court's February 2008, docket on the issue of the damages, if any, to be awarded

---

[3] The contracts provided that Plaintiff would pay a day rate of $16,000.00 per rig, which multiplied by 730 is $11,680,000.00. Of course Defendant would have incurred expenses against this amount. But the extent of those expenses and the actual profit Defendant would have earned is difficult if not impossible to ascertain -- thus, establishing the reasonableness of a liquidated damages clause.

for the breach of the contract for rig 201. Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 41) is GRANTED and Plaintiff's Motion for Summary Judgment (Dkt. No. 38) is DENIED.

IT IS SO ORDERED this 29th day of January, 2008.

/s/ Robin J. Cauthron
ROBIN J. CAUTHRON
United States District Judge