IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHESAPEAKE ENERGY CORPORATION, an Oklahoma corporation,<br><br>   Plaintiff,<br><br>VS.<br><br>TXD SERVICES LP, a Texas limited partnership,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 5:07-cv-00318-C<br>)<br>)<br>)<br>)<br>) |

**BENCH BRIEF REGARDING MITIGATION OF DAMAGES
AND EFFECT OF LOSS OF DRILLING RIGS
IN SUPPORT OF JURY INSTRUCTIONS SUBMITTED**

As indicated in the Pretrial Conference Order submitted by Plaintiff, it is evident that Chesapeake will argue that TXD has not properly mitigated its damages. TXD's obligation to mitigate is a specific contractual provision in paragraph 27.4 which also serves as a liquidated damage provision. Arkansas law recognizes the doctrine of avoidable consequences. This doctrine limits the amount of recoverable damages and provides that a party cannot recover damages resulting from consequences which it could have avoided by reasonable care, effort or expenditure. *See Quality Truck Equipment Company v. Layman*, 912 S.W.2d 18 (Ark. App. 1995). However, Arkansas common law may not be applicable as only a good faith effort is required in contractual performance obligations.

The determination of whether one has acted reasonably in mitigating damages is a question of fact and the burden of proving that a party could have avoided some or all of the damages by acting prudently rests on the party asserting lack of mitigation. *Id.* "Where a party is entitled to the

benefit of a contract, and can save himself from loss arising from a breach thereof at a small expense or with reasonable exertions, it is his duty to do so, and he can only recover such damages as he could not thereby prevent." *Id.* at 20-21 citing *Curtner v. Bank of Jonesboro*, 299 S.W. 994 (1927). Here, TXD exercised good faith attempts to perform including taking on new very onerous loan terms just to postpone foreclosure and have the opportunity to attempt to mitigate the damages. Despite these difficulties, TXD worked diligently and in good faith to, and in fact did, reduce damages during the first year of the contract. However, the financial defaults with its lender caused by Chesapeake's breach caused TXD to lose the rigs thereby making further good faith efforts to reduce damages impossible.

The duty of a party to mitigate whether in contract or at common law must be balanced against the underlying purpose of breach of contract actions which "is to place the injured party in a position as beneficial as he would have been and if the contract had been performed; in short, to give him the benefit of his bargain." *See 215 Club Inc. v. Devore*, 1992 Westlaw 110120 (Ark. App. 1992) citing Howard W. Brill, Arkansas Law of Damages, Section 4-1 (2nd Ed. 1990). "When a party to a contract is prevented from performing because of the other party's fault, the first party is entitled to recover his expectancy, that which he would have received or gained if the other party had carried out the contract." *Id. See also Country Corner Food & Drug, Inc. v. Reiss*, 737 S.W.2d 672 (1987).

Arkansas recognizes the Restatement (Second) on Contracts Section 227 (2004) in *Perkins v. Cedar Mountain Sewer Improvement District No. 43 of Garland County*, 199 S.W.3d 667 (Ark. 2004). The court discussed Restatement (Second), Corbin on Contracts and other treatises to conclude that ". . . one who unjustly prevents the performance or the happening of a condition of promissory duty thereby eliminates it as a condition. Thus, that party cannot escape liability by preventing the happening of the condition on which it was promised." Also, the court stated:

2

> "One who prevents or makes impossible the performance or occurrence of a condition precedent, upon which that person's liability depends under the contract, cannot insist or rely on the condition . . . A promisor who prevents or hinders the occurrence or fulfillment of a condition in a contract excuses the condition, and the liability of the promisor is fixed regardless of the failure to perform the condition."

That precisely fits the facts of this case. TXD had financed the four (4) drilling rigs in question plus other equipment in excess of $50 million. Critical to its financial and even non-monetary conditions of performance with its lender was the performance by Chesapeake under the four (4) rig contracts which, over two (2) years, was going to generate income to TXD in excess of $50 million. Chesapeake's breach of contract immediately forced TXD into defaults with its lender which, after much struggling to survive, lead to a loss on January 31, 2008, of all four (4) rigs plus two (2) other smaller drilling rigs and other equipment. Chesapeake's breach of contract therefore has caused it to lose the drilling rigs and correspondingly any ability or duty to mitigate. Chesapeake's obligation to pay the $16,000 day rate is therefore, according to the *Perkins v. Cedar Mountain* case ". . . fixed regardless of the failure to perform the condition" i.e. mitigation which it prevented TXD from performing.

Similarly in *Dickinson v. McKenzie*, 126 S.W.2d 95 (Ark. 1939) the court held that it is an elementary principle needing no citation of authority in support that there is no breach of a contract where performance is prevented by the conduct of the other party. The party whose own conduct prevents performance of a contract cannot complain of nonperformance. This Arkansas court cited its earlier decision in *Townes v. Oklahoma Mill Company*, 109 S.W. 548, 549.

Arkansas courts have also placed limits on a party's duty to mitigate damages. Pursuant to the doctrine of avoidable consequences, a party is required to take only those steps needed to avoid damages as may be taken at a small expense or with reasonable exertion, and where the expense is so large as to make the requirement impractical, the doctrine has no application. *See Taylor v.*

*George*, 212 S.W.3d 17 (Ark. App. 2005). Here, TXD's attempt to mitigate required significant expense including acceptance of onerous financing terms and the loss of equity in the rigs. Ultimately, mitigation became impossible because Chesapeake's breach resulted in TXD's loss of the rigs. Accordingly, under the facts of this case, the doctrine of avoidable consequences should not be applied when determining TXD's damages for the second year of the contract term.

Another case on point is *McIllwain v. Bank of Harrisburg*, 713 S.W.2d 469 (Ark. App. 1986). In *McIllwain*, the court held that the McIllwain's were entitled to the remedy provided in their contract for breach which included receipt of $50,000 a year for 24 years under a land sale contract. *Id.* The court so held even though it was determined that the McIllwain's failed to mitigate their damages including rejecting several offers from other purchasers to buy the land at issue. The court reasoned that the McIllwain's were entitled to the damages they suffered as a result of the breach by the other parties. *Id.*

In *McIllwain*, the McIllwain's owned 520 acres of farmland. They borrowed certain funds from a bank using the farm as collateral. They then entered a contract to sell the land to another party, the Tiners. The Tiners agreed in the contract to assume the mortgage the McIllwain's held on the property and additionally agreed to assume a second mortgage which was held by Prudential Insurance Company. They further agreed to pay the McIllwain's $50,000 down and $50,000 a year for the next 24 years. The McIllwain's contract with the Tiners included a remedy clause which allowed the McIllwain's the option, in the event of default, of either taking possession of the property and keeping all sums paid as liquidated damages, or accelerating the debt and demanding the balance of the contract to be paid. When the Tiners defaulted on their payments to the bank, the bank foreclosed on the McIllwain's farm. As a result, the farm was sold at a foreclosure sale. However, before foreclosure, the McIllwain's were offered several other opportunities to sell the property which would have mitigated their damages in the case. The court found that the

McIllwain's did not have a duty to mitigate their damages and said that they were entitled to the remedy provided in the contract, including payment of the first and second mortgages on the property and their payments of $50,000 a year for the remaining term of the contract discounted the present value.

Here, TXD expended considerable effort and resources attempting in good faith to reduce its damages for the first year of the contract. Thus, determining its actual damages for the first year of the contract requires the jury to simply consider the amount TXD would be entitled to under the contract -- $16,000 a day for 365 days, less a credit for the days that Rig 201 was leased to other entities. Pursuant to the contract, TXD should then be entitled to collect $16,000/day rate for the additional lost days under the contract because due to the circumstances created by Chesapeake's breach, TXD's ability to mitigate has been destroyed.

In *Lake Ridge Academy v. Carver*, 613 N.E.2d 183 (Ohio 1993) the court found that a clause in a school reservation agreement imposing liability for full tuition if an option to cancel was not exercised prior to a specified date was not a penalty but rather a valid liquidated damage provision. The court discussed that generally a liquidated damage provision does not require mitigation of damages but even if there was such a duty circumstances can prevent a party from being able to do so. Such is the case here after the rigs were lost. TXD no longer has a good faith duty to lease Rig 201 because it lost the rig as a result of Chesapeake's breaches of contract.

Finally, the provision set forth in paragraph 27.4 of the drilling contracts is just another form of a liquidated damages clause. Pursuant to the parties' agreement, this clause is triggered in the event that Chesapeake terminates the contract after commencement of operations. Here, pursuant to the terms of the contract, the operations commenced upon TXD's delivery of Rig 201 to Chesapeake in February 2007. Chesapeake supplied paragraph 27.4 which specifically requires Chesapeake to pay TXD $16,000 a day for every day TXD is unable to lease the rig to someone else.

This special damage language converted a standard "standby rate" clause into a liquidated damage clause. These "standby rate" damage clauses are plain and unambiguous and so common that defaulting companies do not even challenge them. *See Wagner & Brown v. E.W. Moran Drilling Company, Inc.*, 702 S.W.2d 760 (Texas Ct. Of Appeals 1986). This liquidated damage clause provided by Chesapeake is certainly reasonable.

Supplemental jury instructions following contract and the Arkansas law have been submitted.

s/ Terry W. Tippens
Terry W. Tippens, OBA #9027
Mark K. Stonecipher OBA #10483
Lance E. Leffel, OBA #19511
FELLERS, SNIDER, BLANKENSHIP,
    BAILEY & TIPPENS, P.C.
100 N. Broadway, Suite 1700
Oklahoma City, OK 73102-8820
(405) 232-0621 Telephone
(405) 232-9659 Fax
ttippens@fellerssnider.com
mstonecipher@fellerssnider.com
**lleffel@fellerssnider.com**

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: Jesse R. Pierce, Michael G. Harris, and Fred R. Gibson.

s / Terry W. Tippens
Terry W. Tippens

430833.1/73953